IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 20-70022

---

GARLAND BERNELL HARPER,

*Petitioner-Appellant*,

v.

BOBBY LUMPKIN, Director, Texas Department of Criminal Justice,
Correctional Institution Division,

*Respondent-Appellee*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-cv-762

---

**APPELLANT'S PETITION FOR PANEL REHEARING**

---

Sarah L. Ottinger, La. Bar No. 24589
Attorney at Law
2563 Bayou Road, Second Floor
New Orleans, LA 70119
(504) 258-6537
sottinger1010@gmail.com

Carol A. Kolinchak, La. Bar No. 22495
Attorney at Law
2563 Bayou Road, Second Floor
New Orleans, LA 70119
(504) 259-8395
cakolinchak@gmail.com

Counsel for Garland Bernell Harper

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of these proceedings. These representations are made in order that the Judges of this court may evaluate possible disqualification or recusal:

1. *Petitioner-Appellant*: Garland Bernell Harper

2. *Counsel for Respondent-Appellee*: Assistant Attorneys General Willa Cockshutt and Woodson Erich Dryden

   *Former Counsel for Respondent Appellee*: Assistant Attorneys General Stephen M. Hoffman, Patrick Todd, Edward Larry Marshall, Adham Ramzi Bissar

3. *Counsel for Petitioner-Appellant*: Sarah L. Ottinger, Carol A. Kolinchak

   *Former Counsel for Petitioner-Appellant*: Kenneth W. McGuire, Ali R. Fazel

New Orleans, Louisiana this 6th day of February, 2023.

/s/ Sarah L. Ottinger
Sarah L. Ottinger
Counsel for Garland Bernell Harper

i

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS**....................................................... i

**TABLE OF CONTENTS** ........................................................................ ii

**TABLE OF AUTHORITIES** .................................................................. iv

**STATEMENT OF GROUNDS FOR REHEARING**............................................1

**ARGUMENT** ...................................................................................2

**I. REHEARING SHOULD BE GRANTED AND A COA ISSUED BECAUSE THIS COURT FAILED TO APPLY TEXAS LAW TO THE CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PRESENT EVIDENCE AND ARGUE THAT MENTAL ILLNESS RENDERED MR. HARPER'S CONFESSION INVOLUNTARY**....................................2

    **A. Texas law provides for consideration of mental illness in the determination of voluntariness, yet no habeas court has applied it.** ........2

    **B. Reasonable jurists could debate the *Strickland* claim and it merited encouragement.** ...................................................................4

      **1. Deficient Performance**..............................................................4

      **2. Prejudice** ................................................................................5

**II. REHEARING SHOULD BE GRANTED BECAUSE THERE IS A *MARTINEZ V. RYAN* DEFENSE TO THE PROCEDURAL DEFAULT OF MR. HARPER'S SUBSTANTIAL CONFRONTATION CLAUSE/INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIM.** ...................................................................................7

    **A. State habeas counsel's ineffectiveness and the prejudice resulting from it establish cause to excuse the procedural default.** .......................9

    **B. The confrontation clause/ineffective assistance of trial counsel claim was substantial in that it had some merit.** .........................................11

**CERTIFICATE OF SERVICE** .........................................................16

**CERTIFICATE OF COMPLIANCE WITH RULE 35(b)(2)(a) ......................17**

# TABLE OF AUTHORITIES

**Cases**

*Bullcoming v. New Mexico*, 564 U.S. 647 (2011)......................................................13

*Canales v. Stephens*, 765 F.3d 551 (5th Cir. 2014) ................................................10

*Colorado v. Connelly*, 479 U.S. 157 (1986) .................................................................3

*Commonwealth v. Avila*, 912 N.E.2d 1014 (2009) ....................................................13

*Crawford v. Washington*, 541 U.S. 36 (2004) .................................................... 13, 14

*Cuesta-Rodriguez v. State*, 241 P.3d 214 (Okla.Crim.App. 2010).........................13

*Davis v. State*, 313 S.W.3d 317 (Tex. Crim. App. 2010) .........................................3

*Estrada v. State*, 313 S.W.3d 274 (Tex. Crim. App. 2010).....................................3

*Martinez v. Ryan*, 566 U.S. 1 (2012) ........................................................ 1, 9, 10, 15

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) ................................................... 4, 10, 11

*Oursborne v. State*, 259 S.W.3d 159, 172 (Tex. Crim. App. 2008) ......................3, 4

*Pointer v. Texas*, 380 U.S. 400 (1965 .......................................................................12

*Russeau v. State*, 171 S.W.3d 871 (Tex.Crim.App. 2005) ......................................12

*Sandoval v. State*, 2022 WL 17484313, *49 (Tex. Crim. App. 2022) .....................3

*Smith v. Alabama*, 898 So.2d 907 (Ala. Crim. App. 2004) .....................................13

*State v. Bass*, 132 A.3d 1207 (N.J. 2016) .................................................................14

*State v. Locklear*, 681 S.E.2d 293 (2009) .................................................................14

*Strickland v. Washington*, 466 U.S. 668 (1984) ............................................. 4, 9, 15

*Trevino v. Thaler,* 569 U.S. 413 (2013) .................................................................10

*Turner v. Louisiana*, 379 U.S. 466 (1965) ............................................................13

*Wiggins v. Smith, 539 U.S. 510 (2003)* ................................................................10

**Statutes**

Tex. Code Crim. Proc. art. 38.22 ........................................................................7, 9

**Other Authorities**

ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty

    Cases (rev. ed. 2003), reprinted in 31 HOFSTRA L. REV. 913 (2003) ........... 15, 19

**Constitutional Provisions**

U.S. Const. Amend. VI ................................................................................. 14, 17

## STATEMENT OF GROUNDS FOR REHEARING

Rehearing should be granted and a COA issued because the Panel failed to apply Texas law to Mr. Harper's claim that trial counsel was ineffective for failing to present evidence and argue that mental illness rendered Mr. Harper's confession involuntary.

Rehearing should also be granted because there is a *Martinez* defense to the procedural default of Mr. Harper's confrontation clause/ineffective assistance of counsel claim. Undersigned counsel were appointed to this capital case on June 3, 2022, and assumed representation of Mr. Harper at a late date.[1] After reviewing the electronic record on appeal and previous counsel's files, undersigned counsel recognized that there was a valid *Martinez v. Ryan* defense to procedural default that had not, to date, been raised or considered. Because of the significance of the confrontation clause violations to Mr. Harper's sentence of death, undersigned counsel feels duty-bound to bring this *Martinez* defense to the attention of this Court and request rehearing on this basis. Undersigned counsel recognize that this is a defense normally raised in federal district court, but prior counsel did not raise it. Under these unique circumstances, it would be a fundamental miscarriage of justice

---

[1] Mr. Harper's Application for COA was denied by this Court on December 1, 2021. Shortly thereafter, this Court granted federal habeas counsel's motion to withdraw and stayed Mr. Harper's case pending appointment of new counsel.

1

in this capital case to ignore the valid defense to procedural default. No court has ever reviewed the claim on its merits, and Mr. Harper respectfully requests the opportunity to litigate the claim.

## ARGUMENT

I.    **REHEARING SHOULD BE GRANTED AND A COA ISSUED BECAUSE THIS COURT FAILED TO APPLY TEXAS LAW TO THE CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PRESENT EVIDENCE AND ARGUE THAT MENTAL ILLNESS RENDERED MR. HARPER'S CONFESSION INVOLUNTARY.**

Mr. Harper alleged in state and federal court that trial counsel was ineffective for failing to raise readily available evidence of severe mental illness when challenging the voluntariness of Mr. Harper's post-arrest confession. ROA.1308-1319; 256-267; 873-906. Mr. Harper alleged that counsel's deficient performance arose from not asserting the involuntariness of the confession due to mental illness. He alleged the confession would have been suppressed under Texas law on the grounds that it was involuntary had counsel raised the argument. ROA.1309-1317; 257-65.

### A. Texas law provides for consideration of mental illness in the determination of voluntariness, yet no habeas court has applied it.

Tex. Code Crim. Proc. art. 38.22 provides that Texas courts must evaluate a statement's voluntariness by determining "whether the statement was made under voluntary conditions." Article 38.22 § 6. *Oursborne v. State*, 259 S.W.3d 159, 172

2

(Tex. Crim. App. 2008) explains that Article 38.22, in addition to prohibiting police overreaching, "may also be construed as protecting people from themselves because the focus is on whether the defendant voluntarily made the statement. Period." The voluntariness inquiry "can be, but need not be predicated on police overreaching, and . . . could involve the 'sweeping inquiries into the state of mind of a criminal defendant who has confessed.'" *Id*. (quoting *Colorado v. Connelly*, 479 U.S. 157, 166-67 (1986), which holds that *federal* due process *does not* allow sweeping inquiries into state of mind). In other words, "the potential 'involuntary' fact scenarios encompassed by 38.21 and 38.22 are broader in scope than those covered by the Due Process Clause or *Miranda*." *Id*. at 173. "The behavior of police may or may not be a factor. A confession given under the duress of hallucinations, mental illness, medications, or even a private threat . . . could be involuntary" under Texas law. *Id*. *See also Sandoval v. State*, 2022 WL 17484313, *49 (Tex. Crim. App. 2022); *Davis v. State*, 313 S.W.3d 317, 337 (Tex. Crim. App. 2010); *Estrada v. State*, 313 S.W.3d 274, 297-98 (Tex. Crim. App. 2010). No habeas decision in state or federal court mentions the broader Texas law or its impact on determinations of voluntariness.

3

**B. Reasonable jurists could debate the *Strickland* claim and it merited encouragement.**

The question before state and federal habeas courts was whether the failure to raise mental illness and argue its impact on the determination of voluntariness constituted deficient performance and if there was a reasonable probability that had it been raised, the confession would have been suppressed. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The question before this Court was whether reasonable jurists could debate the ineffective assistance of counsel claim or could conclude the issues presented are adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

When evaluating whether a claim is deserving of encouragement or susceptible to debate by jurists of reason, *Miller-El* instructs that courts must look to evidence in the record and not reach a conclusion on the merits of the claim. "[T]he issuance of a COA can be supported by any evidence demonstrating" the factual and legal conclusion at issue. *Id*. at 340. Indeed, reaching the merits of the claim would result in deciding a claim without jurisdiction to do so. *Id*. 336-37.

**1. Deficient Performance**

Strong evidence in the state-court record supporting deficient performance arises from counsel's failure to raise Article 38.22 and Mr. Harper's mental illness in the motion he filed seeking to suppress Mr. Harper's confession. Counsel should

4

have raised all possible, non-frivolous arguments supporting suppression. He did not. When arguing voluntariness, he failed to raise mental illness under Texas's more expansive statute for determining voluntariness. It would be hard for a reasonable jurist not to find deficient performance based on the evidence—though that is too high a standard for issuing a COA. Certainly, reasonable jurists could debate the issue.[2]

## 2. Prejudice

There is ample evidence in the state court record indicating that Mr. Harper suffered from mental illness and abused drugs. Trial counsel knew of Mr. Harper's mental illness, describing it as "severe and debilitating" in a different pretrial motion. Mr. Harper had been diagnosed pretrial with major depressive disorder with psychosis, bipolar disorder with psychotic features, and Post-Traumatic Stress Disorder. According to a defense expert report, hallucinations had a significant impact on Mr. Harper's functioning. A state expert agreed. And immediately following his confession, Mr. Harper reported in a mental health assessment that he was hearing voices telling him what to do. ROA.1310-1311. His Global Assessment of Functioning score in the assessment was 35 on a scale of 100. A score of 35

---

[2] To date, no state or federal court has ruled on deficient performance.

indicated profound dysfunction right after the statement was taken and therefore profound dysfunction hours earlier. ROA.1314.

The expert also opined in habeas proceedings that Mr. Harper's functioning during the confession was severely impacted by mental illness and that his capacity for "rational, well-reasoned decision-making [had] steadily deteriorated due to the extreme paranoia and depression he was experiencing." ROA.1313, 1876 (Ex. 46). Further, "people suffering from mental illness similar to Mr. Harper's are regularly able to hide their illness from others, thus making them appear coherent to the untrained observer." ROA.1314; 1876 (Ex. 46).

All this evidence readily supports the claim that the confession probably would have been suppressed under state law, which takes account of mental illness in determining voluntariness. Yet no court to date has applied Texas law. The state court took none of the mental illness evidence into account. It found that the analysis of voluntariness would be unchanged by evidence of mental illness because there was "no showing of government misconduct that caused applicant's will to be overborne." ROA.2444. Its analysis relied on the narrower federal constitutional standard for establishing voluntariness and never considered Texas statutory law. This was wrong.

The federal district court failed to address the claim at all. ROA.996-999 (listing ineffective assistance of counsel claims, but not addressing this claim). And

this Court, in denying a COA, never considered the ample evidence of mental illness in the state court record supporting the argument that the confession was involuntary. Like the state court, it overlooked the Texas statute allowing for consideration of mental health and merely noted other state court fact-findings supporting voluntariness, concluding that because those facts did not establish coercion, the outcome of the motion to suppress would have been no different. Slip Op. 19.

In this capital case, the evidence of mental illness presented in state court and never considered because courts did not apply Texas law must be considered when assessing voluntariness and therefore *Strickland* prejudice. Mr. Harper asserted it at every stage of habeas proceedings. This Court should grant a COA so that the claim can be briefed and fully addressed in this Court. It is a claim worthy of encouragement, not in the least because arguments supporting prejudice have heretofore been ignored.  In the alternative, the Court should remand the claim to the district court for full consideration.

## II.     REHEARING SHOULD BE GRANTED BECAUSE THERE IS A *MARTINEZ V. RYAN* DEFENSE TO THE PROCEDURAL DEFAULT OF MR. HARPER'S SUBSTANTIAL CONFRONTATION CLAUSE/INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIM.

At the punishment phase of Mr. Harper's trial, the state introduced the over two decades old, unadjudicated homicide of Teasa Jackson over trial counsel's objection. ROA.7865.  The state presented eleven witnesses, comprising more than

three hundred pages of testimony, in an effort to establish that Mr. Harper brutally raped and murdered Teasa Jackson and that there were significant similarities between the Jackson homicide and this case, involving the murder of Triska Rose and her children. ROA.7875-8211. The state relied heavily on this evidence to support a finding of future dangerousness and a sentence of death. ROA.9149-9154, 9189, 9194.

The most damning evidence inculpating Mr. Harper in the Teasa Jackson homicide was introduced in direct violation of the confrontation clause when the state called Dr. Steve Wilson, instead of Dr. Narula, the medical examiner who performed the autopsy of Ms. Jackson and prepared the autopsy report. Trial counsel objected to Dr. Wilson's testimony because Dr. Wilson

> didn't do the report, didn't do the autopsy, he didn't do the anal or vaginal smear, and he has no personal knowledge of how the doctor went about the examination. It's denying our right to confront the doctor who did it…

ROA.7912-7917. Throughout his testimony, Dr. Wilson relied on findings and conclusions made by Dr. Narula and contained in the autopsy report. ROA.7921-7938.

In addition, the state introduced autopsy photographs, ROA.7931, and Dr. Wilson relied on them to describe gruesome injuries and speculate as to their cause. ROA.7931-7935. Furthermore, all the DNA evidence introduced at trial regarding the Teasa Jackson homicide was recovered from vaginal and anal smears taken

8

during the autopsy performed by Dr. Narula.  ROA.7943-7944, 7949-7951, 8049, 8067-8077, 8138-8142, 8198-8207.

While the punishment phase was still in progress, the state informed the defense that Dr. Narula "is back in town and is available for testimony, if needed by the defense," ROA.8415, but trial counsel informed the court they had no intention of calling him as a witness.  This clear waiver of Mr. Harper's confrontation rights by trial counsel was not properly raised in state habeas proceedings.  As the Panel noted, these claims were "placed in a single footnote deep in the body of a 232-page petition that presented 24 claims." Slip Op. at 4.  However, under *Martinez v. Ryan*, 566 U.S. 1 (2012), a habeas petitioner may show cause for default by demonstrating the ineffectiveness of state habeas counsel in failing to raise a substantial ineffective assistance of trial counsel claim.  Mr. Harper's failure to exhaust is excused by state habeas counsel's ineffectiveness in failing to present this claim. Trial counsel's ineffectiveness prejudiced the sentencing phase and Mr. Harper is entitled to a new sentencing trial.

### A. State habeas counsel's ineffectiveness and the prejudice resulting from it establish cause to excuse the procedural default.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court recognized a criminal defendant's Sixth Amendment right to effective assistance of counsel. A defendant claiming ineffective assistance of counsel must show that (1)

counsel's performance was deficient, falling below an "objective standard of reasonableness," and (2) the deficient performance prejudiced the defense. *Id* at 687.

In order to establish cause for procedural default of a claim of ineffective assistance of trial counsel, a federal habeas petitioner must demonstrate that state habeas counsel in the initial collateral review was ineffective and that the "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. *Miller-El v. Cockrell*, 537 U.S. 322 (2003) (describing standards for COA to issue)." *Martinez v. Ryan*, 566 U.S. 1, 9, (2012); *Trevino v. Thaler,* 569 U.S. 413 (2013) (*Martinez* holding applies to State of Texas); *Canales v. Stephens*, 765 F.3d 551, 567-568 (5th Cir. 2014) (finding cause for procedural default and underlying *Wiggins* claim substantial; remanding to district court for evidentiary hearing).

State habeas counsel had a duty "to raise all issues, whether or not previously presented, that are arguably meritorious" and to "make every professionally appropriate effort to present issues in a manner that will preserve them for subsequent review." ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases, Guideline 10.15.1(C), Duties of Post-Conviction Counsel (rev. ed. 2003), reprinted in 31 HOFSTRA L. REV. 913, 1085-86 (2003) (hereinafter "ABA Guidelines"). In this case, state habeas counsel's performance was deficient because Mr. Harper's "arguably meritorious" confrontation

clause/ineffective assistance of counsel claims were not properly raised in his initial state habeas proceedings and were not properly preserved "for subsequent review." These claims were "placed in a single footnote deep in the body of a 232-page petition that presented 24 claims." Slip Op. at 4. Mr. Harper was prejudiced by state habeas counsel's deficient performance because his claims were procedurally defaulted and, as a result, no court has looked at the merits of the substantial, underlying confrontation clause/ineffective assistance of counsel claims.

### B. The confrontation clause/ineffective assistance of trial counsel claim was substantial in that it had some merit.

During the punishment phase, the state presented eleven witnesses who testified solely regarding the unadjudicated Teasa Jackson homicide. Their testimony comprised well over three hundred pages of the punishment phase transcripts. ROA.7875-8211. The state introduced evidence that Teasa Jackson was sexually assaulted and brutally stabbed to death in the bathroom of her apartment while her three young children were sleeping. Testimony described, in detail, that Ms. Jackson had 7 stab wounds to her chest, that at least 1 (and probably 3) of the stab wounds entered her heart and one went all the way into her aorta. ROA.7928. Testimony also described, in detail, other injuries, including abrasions, contusions and bruising. ROA.7929-30. Fingerprint evidence (ROA.7965) and DNA evidence (ROA.8061-8077, ROA.8089-90) were introduced in an effort to link Mr. Harper,

who lived 4 doors down, to this unadjudicated crime. Finally, the state introduced the testimony of Louis Jackson, who was 7 years old when he discovered his mother's body. ROA.8150-8197)

In closing arguments at sentencing, the state relied extensively on this evidence, with particular emphasis on the DNA evidence, to argue that Mr. Harper raped and killed Teasa Jackson, got away with it and then went on to kill again.[3] The state noted the similarities between the Teasa Jackson homicide and the instant offense and urged the jury to make a finding of future dangerousness and return a sentence of death.  ROA.9149-9154, 9189, 9194.

### a.  Deficient performance of trial counsel

As trial counsel initially recognized, introduction of the findings made by Dr. Narula in his autopsy report, the autopsy photographs, and the DNA evidence violated the Confrontation Clause.  Under Texas law, the Confrontation Clause is applicable to all phases of a capital proceeding.  *Russeau v. State*, 171 S.W.3d 871, 880-881 (Tex.Crim.App. 2005) (relying on *Pointer v. Texas*, 380 U.S. 400, 403-04 (1965).  Additionally,

---

[3] The significance of the DNA evidence is further evidenced by the state's argument in state habeas proceedings that this evidence was the "most inculpatory" evidence (ROA.2058), the state District Court's finding that "Louis Jackson's identification of [Harper] was not needed to establish his role in Teasa Jackson's death based on the CODIS hit from the DNA recovered from her body…" (ROA.2392), and the state's argument in federal habeas proceedings that "[t]he evidence conclusively tying Harper to the murder was his DNA …" (ROA.683).

[i]n the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.

*Turner v. Louisiana*, 379 U.S. 466, 471 (1965).

The Confrontation Clause of the Sixth Amendment prohibits "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). A testimonial statement is one with "a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Bullcoming v. New Mexico*, 564 U.S. 647, 659 n.6 (2011). Prior to *Bullcoming*, many states, including Texas, had already concluded that autopsy evidence and reports are testimonial and subject to the Confrontation Clause. *See Wood v. State*, 299 S.W.3d 200, 209-210 (Tex. App. Austin 2009) (autopsy report was testimonial where police suspected the death was a homicide); *Smith v. Alabama*, 898 So.2d 907, 917 (Ala. Crim. App. 2004) (admission of autopsy evidence and reports, without testimony of medical examiner who performed autopsy, violated defendant's Sixth Amendment right to confrontation but was harmless error); *Commonwealth v. Avila*, 912 N.E.2d 1014, 1029 (2009) (autopsy report was testimonial hearsay); *Cuesta-Rodriguez v. State*, 241 P.3d 214, 228 (Okla.Crim.App. 2010) (admission of autopsy report was

testimonial); *State v. Locklear*, 681 S.E.2d 293, 305 (2009) (*Crawford* error to admit "forensic analyses performed by a forensic pathologist and a forensic dentist who did not testify"); *State v. Bass*, 132 A.3d 1207, 1225 (N.J. 2016) (autopsy report testimonial, in part, because autopsy took place during active homicide investigation).

In this case, Dr. Narula, who performed the autopsy, did not testify. Instead, the state called Dr. Wilson, who was not present at the autopsy, to testify about Dr. Narula's findings, describe injuries in photographs taken by Dr. Narula and then offer his own opinion as to cause and manner of death. In addition, Dr. Wilson testified that, according to the autopsy report, Dr. Narula obtained vaginal, anal and oral smears from the victim during the autopsy. The confrontation clause was violated because the jury could not consider the testimonial statements in the autopsy report prepared by Dr. Narula as supporting or explaining Dr. Wilson's opinions without assuming that the statements were true. *Wood* at 2014 ("facts and data in Colemeyer's autopsy report explained and supported Dolinak's opinions only if they were true").

14

Trial counsel's failure to protect this pivotal constitutional right to confrontation fell "below an objective standard of reasonableness."[4]  Counsel had a duty to assert this claim and evaluate it "in light of … the near certainty that all available avenues of post-conviction relief will be pursued in the event of conviction and imposition of a death sentence."  ABA Guideline, 10.8 A(3)(b). Given the emphasis placed on the Teasa Jackson homicide at sentencing, particularly as to future dangerousness, this deficient performance prejudiced Mr. Harper because there is a reasonable probability, "sufficient to undermine confidence in the outcome," that the outcome of the sentencing hearing "would have been different." *Strickland* at 683. Mr. Harper would not have been sentenced to death. Mr. Harper is entitled to a new sentencing hearing.

This Court ruled that these claims were unexhausted and forfeited.  Rehearing should be granted to remand the *Martinez* claim to the District Court to address the claim based on the state court record.

## CONCLUSION

For the reasons set forth herein, as well as others determined by this Court, Petitioner respectfully asks this Court to withdraw its opinion of December 1, 2021

---

[4] Given that the defense theory at sentencing was that Mr. Harper did not commit the Teasa Jackson homicide, there was no strategic reason for waiving a valid constitutional objection to the admission of evidence characterized (as noted above) by the state as the "most inculpatory."

and either grant relief outright or remand the case to the District Court to address these claims.

Respectfully submitted,

*/s/ Sarah L. Ottinger*
Sarah L. Ottinger, La. Bar No. 24589
Attorney at Law
2563 Bayou Road, Second Floor
New Orleans, LA 70119
(504) 258-6537
sottinger1010@gmail.com

*/s/ Carol A. Kolinchak*
Carol A. Kolinchak, La. Bar No. 22495
Attorney at Law
2563 Bayou Road, Second Floor
New Orleans, LA 70119
(504) 259-8395
cakolinchak@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a that a true and correct copy of the foregoing document has been filed with the Clerk of the Court by using the CM/ECF System which will send a notice of electronic filing to all counsel of record on this 6th day of February, 2023.

*/s/ Sarah L. Ottinger*
Sarah L. Ottinger

16

## CERTIFICATE OF COMPLIANCE WITH RULE 35(b)(2)(a)

The undersigned certifies that:

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 40(b) because this brief contains 3,899 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14-point font for text and 12-point font for footnotes.

3.    This brief complies with the privacy redaction requirement of Fed. R. App. P. 25(a)(5), 5th Cir. R. 25.2.13, and Fed. R. Crim. P. 49.1 because it has been redacted of personal data identifiers.

4.    This electronic submission is an exact copy of the paper document, in compliance with 5th Cir. R. 25.2.1.

5.    This brief is free of viruses because it has been scanned for viruses with the most recent version of ESET Endpoint Antivirus, in compliance with 5th Cir. ECF Filing Standard A(6).

*/s/ Sarah L. Ottinger*
Sarah L. Ottinger