IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 20-70022

---

GARLAND BERNELL HARPER,

*Petitioner-Appellant*,

v.

BOBBY LUMPKIN, Director, Texas Department of Criminal Justice,
Correctional Institution Division,

*Respondent-Appellee*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-cv-762

---

## APPELLANT'S PETITION FOR REHEARING EN BANC

---

Sarah L. Ottinger, La. Bar No. 24589
Attorney at Law
2563 Bayou Road, Second Floor
New Orleans, LA 70119
(504) 258-6537
sottinger1010@gmail.com

Carol A. Kolinchak, La. Bar No. 22495
Attorney at Law
2563 Bayou Road, Second Floor
New Orleans, LA 70119
(504) 259-8395
cakolinchak@gmail.com

Counsel for Garland Bernell Harper

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of these proceedings. These representations are made in order that the Judges of this court may evaluate possible disqualification or recusal:

1. *Petitioner-Appellant*: Garland Bernell Harper

2. *Counsel for Respondent-Appellee*: Assistant Attorneys General Willa Cockshutt, Woodson Erich Dryden

   *Former Counsel for Respondent Appellee*: Assistant Attorneys General Stephen M. Hoffman, Patrick Todd, Edward Larry Marshall, Adham Ramzi Bissar

3. *Counsel for Petitioner-Appellant*: Sarah L. Ottinger, Carol A. Kolinchak

   *Former Counsel for Petitioner-Appellant*: Kenneth W. McGuire, Ali R. Fazel

New Orleans, Louisiana this 10th day of February, 2023.


/s/ Sarah L. Ottinger
Sarah L. Ottinger
Counsel for Garland Bernell Harper

i

## RULE 35(b)(1) STATEMENT

In this capital case, Mr. Harper has been denied an appeal of the district court's denial of habeas relief. The Panel of this Court that denied a Certificate of Appealability (COA) did so by reaching the merits of the eight constitutional claims raised. It had no jurisdiction to do so. Instead, the Panel should have made a preliminary assessment of whether jurists of reason 1) could debate resolution of the claims or 2) conclude that the issues presented are adequate to deserve encouragement to proceed further.

The Panel decision conflicts with a long line of Supreme Court precedent. For four decades, the Supreme Court has repeatedly held that courts *cannot* resolve claims on their merits when determining whether a COA should issue. *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); and *Buck v. Davis*, 580 U.S. 100, 115 (2017).

"The writ of habeas corpus plays a vital role in protecting constitutional rights." *Slack*, 529 U.S. at 483. It is especially important in capital cases. "In a capital case, the nature of the penalty is a proper consideration in determining whether to issue" a COA. *Barefoot*, 463 U.S. 893. Mr. Harper respectfully requests that the full Court rehear Mr. Harper's Application for COA.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS...................................................... i

RULE 35(b)(1) STATEMENT.................................................................. ii

TABLE OF AUTHORITIES.................................................................. iv

ISSUE MERITING EN BANC CONSIDERATION ...............................................1

COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE ..................1

STATEMENT OF FACTS.....................................................................2

ARGUMENT AND AUTHORITIES ...................................................3

I.   THE EN BANC COURT SHOULD GRANT REHEARING BECAUSE THE
     PANEL ERRONEOUSLY DENIED A COA BY REACHING THE MERITS
     OF THE CLAIMS UNDER VARYING STANDARDS RATHER THAN BY
     DETERMINING WHETHER JURISTS OF REASON COULD DEBATE THE
     RESOLUTION OF THE CLAIMS OR CONCLUDE THAT THE ISSUES
     PRESENTED WERE ADEQUATE TO DESERVE ENCOURAGEMENT TO
     PROCEED FURTHER....................................................................3

CONCLUSION.....................................................................................9

CERTIFICATE OF SERVICE.............................................................10

CERTIFICATE OF COMPLIANCE WITH RULE 35(b)(2)(a)...........................10

iii

# TABLE OF AUTHORITIES

**Cases**

*Barefoot v. Estelle*, 463 U.S. 880 (1983) ................................................................. ii, 8

*Buck v. Davis*, 580 U.S. 100 (2017) ....................................................................... ii, 5

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) ...................................................... passim

*Nelson v. Davis*, 952 F.3d 651 (5th Cir. 2020) ...........................................................4

*Slack v. McDaniel*, 529 U.S. 473 (2000) ................................................................. ii

*Strickland v. Washington*, 466 U.S. 668 (1984) .......................................................7

*Tennard v. Cockrell*, 542 U.S. 274 (2004)...............................................................5

*United States v. Bennett*, 664 F.3d 997 (5th Cir. 2011)...........................................6

**Statutes**

28 U.S.C. § 2253(c)(2).................................................................................................4

28 U.S.C. § 2254(d)(1)–(2)........................................................................................5

28 U.S.C. § 2254(d)(2)...............................................................................................8

## ISSUE MERITING EN BANC CONSIDERATION

Did the Panel wrongly deny issuance of a COA on all Mr. Harper's constitutional claims by reaching the merits of the claims without jurisdiction rather than determining whether jurists of reason could debate resolution of the claims or conclude that the issues presented were adequate to deserve encouragement to proceed further?

## COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

This is a capital case. Following denial of Mr. Harper's Application for Writ of Habeas Corpus and Motion for Evidentiary Hearing by Texas courts, Mr. Harper timely filed his Application for Writ of Habeas Corpus in the United States District Court for the Southern District of Texas, Houston Division. ROA.41-350. On July 7, 2020, the district court granted respondent's motion for summary judgment and denied habeas corpus relief, an evidentiary hearing, and issuance of a COA. ROA.1007-1008.

On March 29, 2021, Mr. Harper filed an Application for COA in this Court. A panel of this Court denied issuance of a COA on all eight of the claims raised on December 1, 2021. (Slip Opinion attached.) Counsel for Mr. Harper filed a Motion to Withdraw which the Court granted on December 10, 2021. On January 4, 2022, the Clerk of Court sent a letter notifying the parties that the case had been placed in

1

Case: 20-70022     Document: 125-1     Page: 7     Date Filed: 02/06/2023

abeyance pending the appointment of new counsel. Undersigned counsel was appointed by this Court on June 3, 2022. Following extensions granted by the Court, Mr. Harper now timely files his Petition for Rehearing En Banc.

## STATEMENT OF FACTS

To this day, Mr. Harper is a man with severe and debilitating mental illness. Experts for both the state and defense who evaluated him prior to trial concurred in this conclusion. ROA.1314, 1876.[1] This crime emanated from his paranoid and delusional thinking, and he continues to this day to cycle into paranoid and delusional thinking on a regular basis.[2]

Trial counsel did a poor job of presenting Mr. Harper's frailties to the jury that sentenced him to death. ROA.131-160. Nevertheless, Mr. Harper has not been given the opportunity to present the wealth of facts supporting mental illness at an evidentiary hearing in state and federal habeas proceedings. One claim currently before this Court addresses the fundamental unfairness of extracting a confession from a man with mental illness. *See* Petition for Panel Rehearing at 2-7.

---

[1] The state expert changed his opinion between the time of his report and trial. ROA.8954-9128.

[2] At the time of his arrest, within 24 hours of the crime, Mr. Harper was evaluated by a psychiatrist who noted hallucinations and delusions to be present. ROA.1682. The doctor prescribed psychotropic drugs which treat schizophrenia, bipolar disorder and hallucinations. ROA.1683.November 2022 mental health records from TDCJ indicate that Mr. Harper still receives treatment for severe mental illness.

2

Mr. Harper sought a COA in this Court to appeal eight asserted claims of constitutional violations. He contends that his claims are debatable by jurists of reason and adequate to deserve encouragement to proceed further. And yet, at this late juncture of capital proceedings, he was denied an appeal because a panel of this Court applied the incorrect standard for issuance of a COA.

Mr. Harper deserves one shot in habeas proceedings at meaningful review of his sentence of death. The state habeas courts adopted the prosecution's proposed findings of fact and conclusions of law. 2380-2452. The district court denied a writ of habeas corpus in a 16-page opinion after almost 850 pages of briefing and without oral argument. ROA.41-350; 373-657; 683-933. The en banc Court should grant rehearing and allow Mr. Harper an appeal before a different panel of this Court.

## ARGUMENT AND AUTHORITIES

**I. THE EN BANC COURT SHOULD GRANT REHEARING BECAUSE THE PANEL ERRONEOUSLY DENIED A COA BY REACHING THE MERITS OF THE CLAIMS UNDER VARYING STANDARDS RATHER THAN BY DETERMINING WHETHER JURISTS OF REASON COULD DEBATE THE RESOLUTION OF THE CLAIMS OR CONCLUDE THAT THE ISSUES PRESENTED WERE ADEQUATE TO DESERVE ENCOURAGEMENT TO PROCEED FURTHER.**

The Panel opinion in this case fails to follow the standard for issuance of a COA. Before being permitted to appeal the district court's decision in this capital habeas case, Mr. Harper must make "a substantial showing of the denial of a

3

constitutional right." 28 U.S.C. § 2253(c)(2). He satisfies this COA standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Mr. Harper established grounds for the COA to issue. The Court should grant en banc rehearing to review Mr. Harper's Application for COA.

When considering whether a COA should issue, appellate courts should not deny the claim on its merits and therefore deny a COA. Rather, courts must conduct a "threshold inquiry" into the claims that "does not require full consideration of the factual or legal bases adduced in support of the claims. *In fact, the statute forbids it*." *Miller-El v. Cockrell*, 537 U.S. at 336 (emphasis added). If the appellate court decides claims on their merits in an application for COA, "it is in essence deciding an appeal without jurisdiction." *Id.*

At the outset of this opinion, the Panel acknowledged that a substantial showing of the denial of a constitutional right is made by showing that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner." Slip Op. 3 (quoting *Miller-El*, 537 U.S. at 336). It likewise correctly acknowledged that in a capital case, "any doubts as to whether a COA should issue must be resolved in favor of the defendant." *Id.* (quoting *Nelson v. Davis*, 952 F.3d 651, 658 (5th Cir. 2020)).

4

In addition, it said the COA standard in federal habeas proceedings must take into account § 2254 where "a state court has reviewed a petitioner's claim on the merits." *Id.* In that case, a COA should be granted when:

> reasonable jurists could debate that the state court's decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Id.* (internal citations omitted) (quoting 28 U.S.C. § 2254(d)(1)–(2)).

Here, "[d]espite paying lipservice to the principles guiding issuance of a COA, . . . the Fifth Circuit's analysis proceeded along a distinctly different track." *See Tennard v. Cockrell*, 542 U.S. 274, 283 (2004) (citation omitted). Following the introductory paragraph, the opinion erroneously resolved all claims preserved in state court on their merits. It did precisely what the Supreme Court has repeatedly cautioned this Court against. *Id.*; *Buck v. Davis*, 580 U.S. 100, 115-16 (2017) (decision below phrased in proper terms, but COA improperly denied because court found no merit to the claims); *Miller-El v. Cockrell*, 537 U.S. 322, 330, 336-37 (2003) (appellate court acknowledged COA standard, but erroneously denied COA by reaching merits of claim without jurisdiction to do so). Moreover, it applied varying standards of review to reaching the merits of the claims.

Regarding ineffective assistance of counsel for failing to strike or challenge for cause three jurors (Section 3(B) in the district court opinion), the Court concluded

5

that the state court's decision was not unreasonable in its finding of no deficient performance and that Mr. Harper had not met the second *Strickland* prong of prejudice. As a result of reaching the merits of the claim under AEDPA, the Panel declared that "[n]o COA will issue on this claim." Slip Op. 7.

Regarding the substantive *Batson* claim (Section 3(E) in the district court opinion), the Panel stated the appropriate standard for issuance of a COA, but then went on to find that the trial court "did not clearly err by crediting the prosecution's first reason for striking Banks" as nondiscriminatory. Slip Op. 12.[3] "Nor did the trial court clearly err by crediting the prosecutor's second and third reasons" advanced to claim that strikes of those jurors did not violate equal protection. Slip Op. 13. As a result, it agreed with the district court "that the trial court did not clearly err in crediting the prosecutor's second and third reasons." *Id*. It also found that "the TCCA did not clearly err in crediting the prosecutor's fourth stated reason" and that Mr. Harper failed to rebut the prosecution's fifth stated reason for striking [the juror] at all." Slip Op. 14. "*Therefore*," the Court concluded, "the district court's rejection of Harper's *Batson* claim is not debatable." *Id*. (emphasis added). Its conclusion that denial of the claim was not debatable was based on its determination of the merits of the claim.

---

[3] The "clearly erroneous" standard is one applied to the merits review of district court fact-finding on appeal. *United States v. Bennett*, 664 F.3d 997, 1008 (5th Cir. 2011).

The Panel made the same mistake with the *Batson* ineffective assistance of counsel on appeal claim (Section 3(E) in the district court opinion). The Court decided there was no merit to the claim and therefore denied a COA.[4] The standard it applied was "AEDPA deference to *Strickland*'s already deferential standard." "[W]e must deny relief 'if there was a reasonable justification for the state court's decision.'"   Slip Op. 14 (citations omitted). Because it denied relief under the AEDPA standard, "[n]o COA will issue on this claim." Slip Op. 16. At no point in its analysis did it mention the standard for granting a COA. It determined whether it should reach the merits of the claim under AEDPA, thereby deciding the question without jurisdiction. *Miller-El*, 537 U.S. at 342 ("[a]t the COA stage . . . a court need not make a definitive inquiry into [AEDPA applicability]").

The Panel declined to issue a COA on the ineffective assistance of counsel claim regarding the failure to challenge future dangerousness testimony as unreliable (Section 4 in the district court opinion). Again at no time did it apply the correct standard. Instead, it found, on the merits, that Mr. Harper had not met *Strickland*'s requirements. Slip Op. 16-19.

---

[4] The Court said that "Harper does not take issue with *what* the habeas court concluded. Instead, he takes issue with *how* the habeas court reached that conclusion." Slip. Op. 15 (emphasis in the original). This is incorrect. Mr. Harper obviously takes issue with the erroneous denial of his *Batson* claims—which is *what* the court concluded. And he takes issue with *how* the court reached that conclusion: by failing to conduct a comparative juror analysis, by considering the prosecutor's post hoc affidavit, and by not considering the pattern of strikes and its statistical significance. COA Application for COA at 31-33.

The Panel did not issue a COA on the claim that trial counsel was ineffective for failing to raise mental illness when requesting suppression of Mr. Harper's statement to police (Section 3(H) in the district court opinion). Applying the AEDPA standard for review of a state court decision, the Court found that the state court's 'findings were not an "unreasonable determination of the facts.'" Slip Op. 19 (quoting 28 U.S.C. § 2254(d)(2)). It then jumped to the conclusion that "[b]ecause no reasonable jurist could find that the [state] habeas court's decision was unreasonable, no COA will issue on this claim." *Id*. This is surely the closest the Court came to applying the correct COA standard, but the conclusion is based on a merits determination under AEDPA that the federal court should not hear the claim.

The Panel erroneously denied a COA by reaching merits decisions either on the underlying constitutional violations asserted or under AEDPA. In doing so, it deprived Mr. Harper of an appeal of the district court's decision when it had no jurisdiction to do so. This is a capital case. The Court should have done the very opposite—conducted a review of whether claims were debatable resolving any uncertainty in Mr. Harper's favor.

*Miller-El* summarized the standard for issuing a COA as "'something more than the absence of frivolity' or the existence of the mere 'good faith' . . . . We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus." 537 U.S. at 338 (citing *Barefoot v. Estelle*, 463

8

U.S. 880, 893 (1983)). Absence of frivolity and good faith claims are a far cry from claims denied on their merits.

## CONCLUSION

This Court should grant en banc rehearing of the Application for COA and reconsider it under the correct standard for issuing a COA. If en banc rehearing is granted, Mr. Harper stands by the arguments made in his Application for COA.

Rehearing en banc is particularly important at this procedural juncture because the Panel has already ruled on the merits of Mr. Harper's claims without jurisdiction to do so.

Respectfully submitted,

/s/ Sarah L. Ottinger
Sarah L. Ottinger, La. Bar No. 24589
Attorney at Law
2563 Bayou Road, Second Floor
New Orleans, LA 70119
(504) 258-6537
sottinger1010@gmail.com

/s/ Carol A. Kolinchak
Carol A. Kolinchak, La. Bar No. 22495
Attorney at Law
2563 Bayou Road, Second Floor
New Orleans, LA 70119
(504) 259-8395
cakolinchak@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a that a true and correct copy of the foregoing document has been filed with the Clerk of the Court by using the CM/ECF System which will send a notice of electronic filing to all counsel of record on this 10th day of February, 2023.

*/s/ Sarah L. Ottinger*
Sarah L. Ottinger

## CERTIFICATE OF COMPLIANCE WITH RULE 35(b)(2)(a)

The undersigned certifies that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because this brief contains 2,374 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14-point font for text and 12-point font for footnotes.

3.      This brief complies with the privacy redaction requirement of Fed. R. App. P. 25(a)(5), 5th Cir. R. 25.2.13, and Fed. R. Crim. P. 49.1 because it has been redacted of personal data identifiers.

4.      This electronic submission is an exact copy of the paper document, in compliance with 5th Cir. R. 25.2.1.

5.      This brief is free of viruses because it has been scanned for viruses with the most recent version of ESET Endpoint Antivirus, in compliance with 5th Cir. ECF Filing Standard A(6).

*/s/ Sarah L. Ottinger*
Sarah L. Ottinger

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 1, 2021

Lyle W. Cayce
Clerk

No. 20-70022

GARLAND BERNELL HARPER,

*Petitioner—Appellant,*

*versus*

BOBBY LUMPKIN, *Director, Texas Department of Criminal Justice, Correctional Institutions Division,*

*Respondent—Appellee.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-762

Before WILLETT, HO, and DUNCAN, *Circuit Judges.*

PER CURIAM:

A jury convicted Garland Bernell Harper of murder and sentenced him to death. After his direct appeal and habeas petitions were both denied in state court, Harper raised 31 claims in a federal habeas petition. The district court denied all his claims and also denied a certificate of appealability (COA). Harper asks us to issue a COA on eight of those claims which he presents as posing five distinct legal issues. We DENY Harper a COA on all of his claims for the reasons explained below.

No. 20-70022

## I

Harper was convicted of murdering his girlfriend, Triska Rose, and her two daughters: Mya, aged seven, and Briana, aged sixteen. The jury sentenced Harper to death in a separate punishment phase.

Harper filed a direct appeal raising eight claims. The Texas Court of Criminal Appeals (TCCA) found no error and affirmed Harper's conviction. Harper later filed an application for a writ of habeas corpus. The trial court drafted proposed findings of fact and conclusions of law, recommending that Harper's application be denied. The TCCA adopted these findings of fact and conclusions of law with a few minor adjustments and denied Harper's application. Harper then filed a petition for a writ of habeas corpus in federal court, which was 291 pages long and contained thirty-one claims. The district court denied each of Harper's claims in a sixteen-page opinion and did not certify any issue for review on appeal. Harper asks us to issue a certificate of appealability on eight of the thirty-one claims. Some claims overlap and, as a result, Harper presents them as five issues: (1) a Confrontation Clause claim (claim 2 of Harper's habeas petition); (2) a *Strickland* claim premised on ineffective assistance of counsel during voir dire (claim 11); (3) a *Batson* claim (claims 12, 13, and 28); (4) a second *Strickland* claim premised on counsel's failure to argue that Harper's mental illness rendered his confession involuntary (claims 15 and 16); and (5) a third *Strickland* claim premised on counsel's failure to object on reliability grounds to the government's expert on future dangerousness, Dr. Moeller (claim 7).

## II

We may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has clarified that this "substantial

showing" requires demonstrating that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In a capital case, "any doubts as to whether a COA should issue must be resolved in the petitioner's favor." *Nelson v. Davis*, 952 F.3d 651, 658 (5th Cir. 2020) (quoting *Clark v. Thaler*, 673 F.3d 410, 425 (5th Cir. 2012)).

Where, as here, "a state court has reviewed a petitioner's claim on the merits, our review is constrained by the deferential standards of review found in the Antiterrorism and Effective Death Penalty Act ('AEDPA')." *Id.* (citing 28 U.S.C. § 2254). "Under these circumstances, we may not issue a COA unless reasonable jurists could debate that the state court's decision was either 'contrary to, or involved an unreasonable application of, clearly established Federal law,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* (internal citations omitted) (quoting 28 U.S.C. § 2254(d)(1)–(2)).

## A

Harper's first claim is that the district court erred by failing to consider his Confrontation Clause claim and, in the alternative, that his trial and appellate counsel were ineffective for failing to raise it. This issue received only a single footnote in Harper's state and federal habeas petitions. So it isn't surprising that the habeas court and the district court below did not discuss it. After the district court dismissed his habeas petition, Harper filed a Rule 59(e) motion to alter or amend the judgment, arguing that the district court had improperly overlooked his claim. The district court denied this motion, finding that the argument had not been fairly placed before the court.

No. 20-70022

We agree with the district court that Harper did not sufficiently plead his Confrontation Clause claim. A conclusory footnote in a 291-page federal habeas petition is not enough to put a district court on notice of a claim. Habeas petitions must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quoting RULES GOVERNING § 2254 CASES 2(c)). "[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

And even if a footnote were enough to raise the issue under the federal rules, it was not enough to comply with the exhaustion requirement. "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019) (quoting *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004)). A fair opportunity requires that "all the facts necessary to support the federal claim were before the state courts" and "the habeas petitioner must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 277–78 (1971)). "Arguments raised in a perfunctory manner, such as in a footnote, are waived" because they do not give the state court a fair opportunity to consider the claim. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003) (quoting *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002)). Harper's purported Confrontation Clause claim was just as buried in his state habeas petition. (Indeed, the two petitions are almost identical.) It was placed in a single footnote deep in the body of a 232-page petition that presented 24 claims. Unsurprisingly, neither the Texas District Court nor the Texas Court of Criminal Appeals treated this as a separate claim. The state and federal

courts were not the only ones that overlooked Harper's Confrontation Clause footnote. Harper overlooked it too. His state and federal habeas petitions failed to list it as a separate claim. And Harper did not ask the TCCA to reconsider its decision in light of his Confrontation Clause claim after the court issued its opinion without discussing footnote 12. The fact that no party—not even Harper's own lawyer—understood him to have raised a Confrontation Clause claim is evidence enough that this issue was neither fairly presented to the state court nor adequately pleaded before the federal district court. The district court did not abuse its discretion by refusing to reconsider its decision in light of this unexhausted and forfeited claim.

Neither of Harper's alternative arguments have any merit either. He first argues that the district court should have *sua sponte* construed his reply brief, which did raise a Confrontation Clause argument, as a Rule 15 motion to amend his habeas petition. We need not decide this argument. Even if true, Harper's claim would still be unexhausted for failing to present the claim to the state habeas court.

Second, Harper argues that it doesn't matter that he put his Confrontation Clause claim in a footnote because that footnote cited a transcript in which his trial counsel made the essence of a Confrontation Clause objection. Harper bases this argument on *Dye v. Hofbauer* and its progeny. They hold that a claim properly presented in an earlier proceeding can be incorporated by reference into a federal habeas petition. *Ramey v. Davis*, 942 F.3d 241, 248 (5th Cir. 2019) (citing *Dye v. Hofbauer*, 546 U.S. 1, 4 (2005) (per curiam)). But *Dye* and *Ramey* involved claims that were properly raised in prior *briefs*—not exhibits. *See id.* (claim properly raised in direct appeal brief and state habeas petition, but insufficiently briefed in federal habeas petition, was incorporated by reference); *Dye*, 546 U.S. at 4 (claim properly raised in a state habeas brief was incorporated by reference in federal habeas petition). Requiring courts to search through every exhibit

cited in a habeas petition to discover additional possible arguments would be a massive and unwarranted extension of *Dye*. *Dye* didn't turn habeas petitions into matryoshka dolls. Claims cannot be hidden inside of voluminous exhibits cited in footnotes hidden inside of habeas petitions that are hundreds of pages long. *See* Rules Governing § 2254 Cases 2 advisory committee note (noting that Rule 2 does not require judges to grope through "two thousand pages of irrational, prolix and redundant pleadings" (quoting *Passic v. Michigan*, 98 F. Supp. 1015, 1016 (E.D. Mich. 1951)); *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990) ("[D]espite our firm conviction that the pleading requirements in habeas corpus proceedings should not be overly technical and stringent, it would be unwise to saddle district judges with the burden of reading through voluminous records and transcripts in every case." (quoting *Williams v. Kullman*, 722 F.2d 1048, 1051 (2d Cir. 1983)). No COA will issue on this claim.

## B

Harper's second claim is that his counsel's performance was ineffective for failing to strike or challenge for cause three jurors—Dowlin, Basey-Higgs, and Williams. To succeed, Harper must show "(1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense." *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 689–94 (1984)). "Regarding the first prong, '[t]o establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness."'" *Id.* (alteration in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). "Regarding the second prong, 'to establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." '" *Id.* (quoting *Wiggins*, 539 U.S. at 534).

Harper suggests that our decision is governed by two lines of Supreme Court cases that establish (1) that the death penalty cannot be mandatory, *see Tuilaepa v. California*, 512 U.S. 967, 972 (1994); *Sumner v. Shuman*, 483 U.S. 66, 77 (1987); *Roberts v. Louisiana*, 428 U.S. 325, 333 (1976) (plurality); *Woodson v. North Carolina*, 428 U.S. 280, 301 (1976) (plurality), and (2) that jurors must be willing and able to give effect to mitigating evidence when deciding whether to approve the death sentence, *Morgan v. Illinois*, 504 U.S. 719, 733–35 (1992); *Penry v. Lynaugh*, 492 U.S. 302, 327–28 (1989); *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982). But the state court found that these three jurors were all willing to consider mitigating evidence. The court reasoned that "none of the cited jurors indicated that they would automatically vote for the death penalty in every case and all expressed the opinion that they could answer the special issues in such a way that either life or death would result based on the evidence and the law." Based on this evidence, the state court concluded that Harper's counsel was not ineffective for failing to use a peremptory strike against these jurors. While Harper may disagree with this conclusion, the state court's decision was supported by the evidence and its legal conclusion that Harper did not satisfy *Strickland*'s first prong was therefore not unreasonable.

And even if Harper could meet *Strickland*'s first prong, he cannot meet the second. He does not even argue that the outcome would have been different if his counsel had objected to these three jurors. No COA will issue on this claim.

## C

Harper's third claim is that the prosecutor discriminated against prospective black jurors (Harper's "*Batson*" claim). The Government

argues that Harper's *Batson* claim has evolved considerably since it was first presented on direct appeal, and as a result most of it is procedurally defaulted. We first consider whether any of Harper's *Batson* arguments are procedurally defaulted, before evaluating the merits of his exhausted arguments.

1

Federal habeas review of a claim is procedurally barred if the highest available state court "dismissed the claim on a state-law procedural ground instead of deciding it on the merits." *Rocha v. Thaler*, 626 F.3d 815, 820 (5th Cir. 2010) (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989)). But to qualify, that state-law procedural ground must be both an "independent and adequate ground for dismissal." *Id.* (quoting *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997)). Independent means "independent of the merits of the federal claim." *Id.* at 821 (quoting *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001)). Adequate means that the rule is "strictly or regularly applied evenhandedly to the vast majority of similar claims." *Id.* (quoting *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995)).

The TCCA dismissed Harper's *Batson* claim in part under its procedural rule that arguments that could have been raised on direct appeal but were not are procedurally defaulted. *See Ex parte Nelson*, 137 S.W.3d 666, 667 (Tex. Crim. App. 2004) (en banc) ("It is well-settled 'that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.'" (quoting *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (en banc))). We have previously recognized this rule as an adequate state ground that bars federal habeas relief, *Aguilar v. Dretke*, 428 F.3d 526, 533 (5th Cir. 2005) (citing *Ex parte Gardner*, 959 S.W. 2d at 199), and Harper does not argue that we should reconsider that decision. So

the first question we must answer is which of Harper's *Batson* arguments—
if any—are procedurally defaulted.[1]

Harper's arguments in support of his *Batson* claim fall into two
buckets. The first is that the prosecution's strikes followed a pattern that
gave rise to an inference of discrimination. The second is that each of the
prosecution's five stated reasons for using a peremptory strike against juror
Banks were pretextual.

We start with Harper's "pattern of strikes" argument. Harper did
make a version of this argument on direct appeal. But he didn't present any
evidence of the racial makeup of the jury pool as a whole. The TCCA held
that the juror questionnaires, which would have provided evidence of the
racial makeup of the jury pool, were essential to substantiate Harper's claim
that there was a racial disparity between the venire and the seated jury. In
other words, by failing to introduce the juror questionnaires, Harper was
effectively asking the TCCA to take his word for it that the seated jurors
were more likely to be white than the venire was. Because evidence of the
racial makeup of the accepted members was not in the record, Harper could
not substantiate this claim. As a result the TCCA dismissed his claim on
direct appeal. When Harper tried to raise this argument in his state habeas
litigation, this time with the evidence he needed, the TCCA held that Texas
law barred him from relying on arguments or evidence that he could have but
failed to raise on direct appeal. Harper does not argue that the TCCA
misapplied Texas law on this point. Therefore, while Harper has properly

---

[1] Petitioners can overcome procedural default if they demonstrate "cause for the
default and actual prejudice as a result of the alleged violation of federal law, or demonstrate
that failure to consider the claims will result in a fundamental miscarriage of justice."
*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Martinez v. Johnson*, 255 F.3d 229,
239 (5th Cir. 2001) (discussing *Coleman*). However, Harper does not argue this point, and
we do not see an obvious case for excusing procedural default either.

exhausted a pattern-of-strikes claim, he cannot rely on evidence that he did not present on direct appeal.[2]

Next we consider Harper's argument that the state's five proffered reasons for striking juror Banks were pretextual. Again, we find that some of these arguments are fully preserved, some have been expanded to rely on additional theories or evidence, and others are entirely procedurally defaulted.

Harper did procedurally exhaust his objections to the state's first and second proffered reasons. But he only partially exhausted his objection to the state's third proffered reason. The prosecutor's third proffered reason was that Banks had said that "everybody is capable of rehabilitation." Harper did argue in the direct appeal that this reason was pretextual because jurors Cotton and Basey also expressed that the chance for rehabilitation was the most important factor to them and they were seated anyways. But in his habeas petition, Harper relied on a comparison to five additional jurors— jurors Price, Moore, Pavlovich, Summer, and Vaughan—who, like Cotton, Basey, and Banks, expressed that rehabilitation is the most important goal of criminal punishment. Because Harper did not rely on a comparison to these additional jurors on direct appeal, he cannot do so now.

Harper next argues that the State's fourth proffered reason—that Banks failed to answer the question about whether life in prison is more effective than the death penalty—was pretextual. But this argument too was almost entirely procedurally defaulted. In his direct appeal, Harper's only objection to this proffered reason was that there was no evidence that Banks

---

[2] Because Texas's abuse-of-the-writ doctrine prevents Harper from relying on evidence that was not in the record on direct appeal, we need not consider the Government's alternative argument that *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011), compels the same result.

No. 20-70022

was being "deceptive, or untruthful, in failing to answer that question." In his two habeas petitions, Harper radically reshaped his argument, relying on evidence not presented in his direct appeal. He now argues that the prosecution failed to strike three other jurors who also failed to answer parts of the questionnaire. Fair point. But again, Harper cannot raise it now because this argument was not presented on direct appeal.

Finally, Harper argues that the State's fifth proffered reason—Banks's strong belief in the importance of forgiveness based in part on her background in ministry—was pretextual. But Harper did not make any version of this argument on direct appeal. This argument is entirely procedurally defaulted.

2

Having sorted through which arguments in support of Harper's *Batson* claim were procedurally defaulted and which were not, we consider whether the district court's denial of the non-defaulted *Batson* arguments is debatable. We conclude that it was not.

Where, as here, the defendant has made out a prima facie case that race motivated the challenged strikes, and the prosecutor has provided a race-neutral explanation for the strike, the trial court must weigh the evidence and decide whether the prosecutor's explanation is credible or mere pretext for discrimination. *Batson v. Kentucky*, 476 U.S. 79, 96–98, 98 n.21 (1986). Because this question "largely will turn on evaluation of credibility," *id.* at 98 n.21, and the best evidence of credibility is "the demeanor of the attorney who exercises the challenge," *Hernandez v. New York*, 500 U.S. 352, 365 (1991) (plurality opinion), the trial court's decision "is entitled to 'great deference' and 'must be sustained unless it is clearly erroneous,'" *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (citation omitted) (quoting *Batson*, 476 U.S. at 98 n.21 and *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008)). "[T]he

federal court's role is to 'determine whether the trial court's determination of the prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary.'" *Hoffman v. Cain*, 752 F.3d 430, 448–49 (5th Cir. 2014) (quoting *Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir. 2005)).

We start with Harper's pattern of strikes argument. For statistical evidence like this to be relevant, "data concerning the entire jury pool is necessary. The number of strikes used to excuse minority . . . jury pool members is irrelevant on its own." *Medellin v. Dretke*, 371 F.3d 270, 278–79 (5th Cir. 2004) (per curiam). As noted above, Harper is barred from using evidence that he did not present on direct appeal.[3] Because he cannot rely on the juror questionnaires, and the questionnaires were necessary to prove Harper's statistical claim, the district court's dismissal of this argument is not debatable.

Next, we consider Harper's argument that each of the prosecutor's five stated reasons for striking Banks were pretextual.

The trial court did not clearly err by crediting the prosecutor's first reason for striking Banks, which was that Banks did not answer questions directly and tended to "ponder," out loud, and at length. Banks was indeed loquacious and noncommittal. At first, she seemed to say that she was categorically opposed to the death penalty, saying: "I mean, I'm pretty settled—I feel like I'm pretty settled on my thoughts concerning the death penalty. I don't like to see people die. [Prosecutor:] Right. [Banks:] Period. I mean, who does?" She then indicated that the death penalty *might* be appropriate for serial killers. When the prosecutor later asked if the death

---

[3] Even if Harper had presented this evidence, we recently denied *Batson* claims based on similar statistics. *See Sheppard v. Davis*, 967 F.3d 458, 472 (5th Cir. 2020), *cert. denied sub nom. Sheppard v. Lumpkin*, 141 S. Ct. 2677 (2021).

No. 20-70022

penalty should only be used for serial killers, she responded that "[t]hose are not the only cases" and indicated that the murderer's remorse or chance for rehabilitation were the most important factors to her. Three pages of the transcript are then taken up by Banks's extended discussion of the facts of an unrelated DUI homicide case, and why she felt that 30 years imprisonment was justified because the crash took the lives of five children. Even after dozens of pages of the transcript were taken up discussing the death penalty, Banks still said that she had made only an "initial response," and that if she had another "30 minutes to ponder on the question" she might change her mind on when the death penalty is appropriate. To be sure, the prosecutor's questions likely played a role in Banks's meandering and noncommittal responses. But in light of these facts, we cannot conclude that the trial court clearly erred in crediting the prosecutor's explanation that she was striking Banks because she would not answer the question of her position on the death penalty clearly.

Nor did the trial court clearly err in crediting the prosecutor's second and third reasons: (2) that Banks was opposed to the death penalty, and (3) that she believed strongly in giving people a chance to rehabilitate themselves in prison. Both of these justifications had substantial basis in the record. True, Banks later walked back her statement that she was "pretty settled" in her opposition to the death penalty. But even then, she continually insisted on the importance of rehabilitation and tied her distaste for the death penalty to her religious beliefs. There is nothing wrong with expressing a distaste for the death penalty. Nor is it racially discriminatory for a prosecutor to use a peremptory strike because a juror expresses such distaste. We agree with the district court that the trial court did not clearly err in crediting the prosecutor's second and third stated reasons.

Harper fares no better with his argument that the prosecutor's fourth proffered reason was pretextual. In his direct appeal, Harper argued that

No. 20-70022

Banks was not being untruthful or deceptive by failing to respond to one of the items on the questionnaire. But this argument does nothing to demonstrate that the prosecutor's stated reason was pretextual. Both things can be true: Banks could have been fully truthful and forthcoming, and the prosecutor could have been concerned that she failed to respond to one of the most important items on the questionnaire. Therefore, the TCCA did not clearly err in crediting the prosecutor's fourth stated reason.

Finally, we note that even if Harper had evidence tending to disprove some of the prosecutor's proffered reasons, that is not enough. "[A] *Batson* claim will not succeed where the defendant fails to rebut each of the prosecutor's legitimate reasons." *Sheppard*, 967 F.3d at 472 (citing *Fields v. Thaler*, 588 F.3d 270, 277 (5th Cir. 2009) and *Stevens v. Epps*, 618 F.3d 489, 500 (5th Cir. 2010)). Harper failed to rebut the prosecution's fifth stated reason for striking Banks at all. Therefore, the district court's rejection of Harper's *Batson* claim is not debatable.

3

Harper next argues that his counsel on direct appeal rendered ineffective assistance by making an incomplete *Batson* claim. He faults his counsel on direct appeal for conducting only a limited comparative juror analysis, failing to rebut the prosecutor's fifth stated reason for striking Banks at all, and failing to include the questionnaires of the jurors into the record.

An ineffective assistance of appellate counsel claim "requires a showing that (1) counsel's performance was legally deficient, and (2) the deficiency prejudiced the defense." *United States v. Bernard*, 762 F.3d 467, 471 (5th Cir. 2014) (citing *Strickland*, 466 U.S. at 687 (1984)). "Applying AEDPA deference to *Strickland*'s already deferential standard, we must deny relief if 'there is any reasonable argument that [appellate] counsel satisfied *Strickland*'s deferential standard' despite failing to make the

argument [in question]. In other words, we must deny relief 'if there was a reasonable justification for the state court's decision.'" *Higgins v. Cain*, 720 F.3d 255, 265 (5th Cir. 2013) (first alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 105, 109 (2011)).

The habeas court conducted an extensive argument-by-argument review of Harper's comparative juror analysis argument. It considered each argument that Harper said should have been raised. It found that each of these arguments was meritless, and that as a result, Harper's appellate counsel was not ineffective for failing to raise them.

But Harper does not take issue with *what* the habeas court concluded. Instead, he takes issue with *how* the habeas court reached that conclusion. He argues that the habeas court improperly relied on the prosecutor's subsequent affidavit which explained some of the inconsistencies in her proffered reasons for striking Banks. For example, the prosecutor averred that her inaccurate statement that Banks wanted to do away with the death penalty was an "honest mistake based on the prosecutor's impression after Banks repeatedly emphasized her belief in forgiveness and rehabilitation." The habeas court also relied on the prosecutor's testimony that while other jurors mentioned rehabilitation, the prosecutor only struck Banks because those jurors "did not reach the intensity of Banks' belief in rehabilitation and forgiveness." Harper argues that by relying on this "post hoc" reasoning, the habeas court violated *Miller-El II*'s "stand or fall" rule.

Harper's argument that *Miller-El II* prevents the prosecution from ever introducing additional evidence to resist a *Batson* claim is wrong. *Miller-El II*'s "stand or fall" rule means that prosecutors and later reviewing courts cannot accept "either entirely different substituted reasons or post hoc reasons for strikes." *Chamberlin v. Fisher*, 885 F.3d 832, 841 (5th Cir. 2018) (en banc) (discussing *Miller-El v. Dretke* (*Miller-El II*), 545 U.S. 231, 251–52

(2005)). But *Miller-El II* "does not extend to preventing the prosecution from later supporting its originally proffered reasons with additional record evidence, especially if a defendant is allowed to raise objections to juror selection years after a conviction and to allege newly discovered comparisons to other prospective jurors." *Id.* "Nothing in the 'stand or fall' statement means that the prosecutor would forfeit the opportunity to respond to such contentions." *Id.*

The prosecutor's affidavit falls squarely within the type of evidence that *Chamberlin* said later reviewing courts may consider: a prosecutor's "opportunity to respond" to "newly discovered comparisons to other prospective jurors." *Id.* This makes sense. If the prosecution was not able to explain why it did *not* strike certain jurors after the fact, it would have to foresee future *Batson* claims and explain why it was *not* striking each prospective juror during jury selection. *See Chamberlin v. Fisher*, 855 F.3d 657, 674 (5th Cir. 2017) (Clement, J., dissenting) ("[T]o avoid the result reached by the majority here, during jury selection the prosecution would not only have had to explain why it struck specific black jurors—as it did—but also why it did not strike all white prospective jurors as well. There is nothing in *Batson*, *Miller-El II*, or any other case that compels anything of the sort."), *rev'd,* 885 F.3d 832 (5th Cir. 2018) (en banc) (Judge Clement's position was later adopted by the en banc court). *Miller-El II* requires consistency, not prophecy. No COA will issue on this claim.

## D

Harper next argues that his trial counsel was ineffective for failing to object to the introduction of Dr. Moeller's testimony on the basis that it was unreliable under the standard set forth in *Kelly v. State*, 824 S.W.2d 568, 573

(Tex. Crim. App. 1992) (en banc).[4] The Supreme Court has acknowledged that testimony from psychologists on likelihood of future dangerousness is rather shaky in general because studies have shown that such testimony is wrong more often than it is right. *See Barefoot v. Estelle*, 463 U.S. 880, 901 (1983) (considering a report from the American Psychiatric Association (APA) stating that psychiatric opinions regarding future dangerousness are wrong "most of the time"); *see also Coble v. State*, 330 S.W.3d 253, 275 n.53 (Tex. Crim. App. 2010) (noting that "[m]ore recent psychiatric and legal articles have reached a similar conclusion [to the APA's amicus brief in *Barefoot*], although some conclude that the accuracy of clinicians' predictions may now be slightly better than chance when they also use risk assessment and actuarial tools"). Nevertheless, the Supreme Court in *Barefoot*, 463 U.S. at 901, and the Texas Court of Criminal Appeals in *Coble*, 330 S.W.3d at 275–77, both concluded that expert testimony on future dangerousness may be admissible in some cases if it is reliable.

Even if we assumed that Harper's counsel rendered ineffective assistance, Harper cannot meet *Strickland*'s second prong by showing prejudice, for two reasons: (1) the record shows that the court would have denied a *Kelly* objection, and (2) there was ample evidence of future dangerousness in the record apart from Dr. Moeller's testimony.

---

[4] In his habeas petition, Harper repeatedly states that his counsel should have objected to the introduction of Dr. Moeller's testimony based on both *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–92 (1993), and *Kelly*, 824 S.W.2d at 573. But as Appellee correctly notes, *Daubert* only applies to proceedings based on the Federal Rules of Evidence. *See Daubert*, 509 U.S. at 588 (discussing Rule 702 of the Federal Rules of Evidence). Harper's trial occurred in a Texas court—not a federal court—so his trial counsel could not have made a *Daubert* challenge. Instead *Kelly*'s three-element test, which resembles *Daubert*'s test, governs. *See Kelly*, 824 S.W.2d at 573. The rest of this opinion will only discuss whether Harper's trial counsel erred in failing to object to the introduction of Dr. Moeller's testimony under the Texas rules of evidence (a "*Kelly*" challenge).

No. 20-70022

First, a *Kelly* objection would have been futile. While Harper's counsel did not specifically make a *Kelly* objection, he did "object to [Dr. Moeller's] testimony as having any value if it's from a lay perspective." Harper's counsel also told the court, as a part of his argument that Dr. Moeller should not be able to testify, that the prosecution was "not calling Dr. Moeller to explain his report . . . . [t]hey're calling Dr. Moeller to disavow that report." The court overruled those objections. It is exceedingly unlikely that the court would have changed its mind had Harper's counsel merely uttered the words "*Kelly*" or "*Daubert*." *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (no ineffective assistance of counsel for failing to make an objection that would have been overruled).

Second, there was ample evidence supporting the jury's finding on future dangerousness even without Dr. Moeller's testimony. First and foremost, there was the evidence of this crime: Harper brutally murdered four people, including two young girls. The jury also heard evidence that he raped and killed another woman back in 1989, put a knife to a woman's neck and robbed her, forced a different woman into his car and assaulted her, assaulted a cab driver and refused to pay his fare, stole a purse from a former co-worker and withdrew $800 from her account before being arrested, stole a woman's purse and pushed her pregnant sister into a shopping cart before stealing a car and fleeing the scene, and took another woman's purse, knocked her down, and again fled in a car. In light of this substantial (indeed, overwhelming) evidence that Harper was dangerous, Dr. Moeller's testimony did not cause prejudice. *See Coble*, 330 S.W.3d at 281 (erroneously admitted testimony from psychologist on likelihood of future dangerousness did not cause prejudice because there was "ample evidence" of such dangerousness "quite apart from [the psychologist's] testimony"); *see also Busby v. Davis*, 925 F.3d 699, 723 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 897

(2020) (no ineffective assistance of counsel because it was "highly likely" that the result would have been the same without the error).

E

Harper's final argument on appeal is that his trial counsel was ineffective for not arguing that his mental illness rendered his confession involuntary. He argues that had counsel raised this argument, there is a reasonable probability that the trial court would have suppressed his confession, or that at least one juror would have voted to acquit.

We are not considering this issue on a clean slate. The habeas court considered Harper's claim and held against him. It found that trial counsel was not ineffective because the trial court did consider whether Harper's claim was voluntary. The habeas court noted that the trial court watched the video of Harper's confession which showed that Harper was given his *Miranda* warnings, asked questions about the warnings, and did not appear intoxicated or otherwise impaired. Based on these facts, the trial court found that Harper was not coerced in any way, and admitted the confession. In light of the trial court's findings, the state habeas court concluded that the result would not have been any different had trial counsel made this additional argument. The habeas court also concluded that it was "speculative at best that at least one juror would have found the applicant's confession involuntary."

The habeas court's findings were not an "unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). The trial court and the jury were both able to watch Harper's confession and heard testimony about his mental health. Based on these facts, they were able to consider what probative value Harper's confession had even without a specific argument from Harper's trial counsel. Because no reasonable jurist could find that the habeas court's decision was unreasonable, no COA will issue on this claim.

No. 20-70022

## III

We DENY Harper's application for a COA on all claims.